**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**RICHARD KEITH ALAN, II,**

      **Plaintiff,**

**vs.**                          **Case No. 4:07cv485-SPM-WCS**

**THE HONORABLE KATHLEEN
DEKKER, and WILLIE MEGGS,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

The case has been remanded to me for consideration of Defendant Dekker's motion for Rule 11 sanctions. Doc. 10. Doc. 34. On October 3, 2008, I entered an order to show cause, identifying the issues that appeared to me to give rise to the possibility of Rule 11 sanctions. Doc. 35. That order was then stayed so that Plaintiff could pursue his appeal in his state criminal case. Doc. 37. When that process was completed, the stay was lifted. Doc. 69. Plaintiff filed a response to the motion. Doc. 81. Defendant was given leave to file a reply, doc. 85, and a reply was filed. Doc. 86.

Plaintiff has asked for an evidentiary hearing, doc. 74, p. 1, but has come forward with no basis for this court to hold an evidentiary hearing. Defendant's motions should be resolved on the documents which have been filed.

Plaintiff argues that Defendants' motion[1] for 28 U.S.C. § 1927 sanctions (attorney's fees), doc. 76, is untimely. Doc. 81, p. 1. Local Rule 54.1(A) refers to Fed. R. Civ. P. 54(d) for the timing of the motion. That rule provides that the motion for attorney's fees must be filed no later than 14 days after entry of the judgment. Fed. R. Civ. P. 54(d)(2)(B)(i). While the motion to dismiss was granted, judgment has not yet been entered. Defendants' motion for § 1927 sanctions is timely.

Defendant has also sought Rule 11 sanctions since November 29, 2007, when the motion to dismiss, doc. 10, was filed. Doc. 10, p. 6. Rule 11(c)(4) authorizes an award of attorney's fees.

Plaintiff argues that the court lacks jurisdiction to consider the Rule 11 motion as the case was recently administratively closed by the clerk. Doc. 81, p. 1. The clerk's docket notation does not affect the court's jurisdiction since the Rule 11 issue was remanded and has been pending before me all along. This case is not closed to this extent, and those motions are still pending.

The Eleventh Circuit affirmed this court's dismissal of the complaint. Doc. 49. I had erroneously recommended dismissal as to Judge Dekker by the application of Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75

---

[1] This motion, unlike the Rule 11 motion, is filed also on behalf of Defendant Meggs.

L.Ed.2d 206 (1983).  Doc. 28.  Chief District Judge Mickle and the Eleventh Circuit

found dismissal appropriate by application of <u>Younger v. Harris</u>, 401 U.S. 37, 91 S.Ct.

746, 27 L.Ed.2d 669 (1971).[2]  Docs. 34 and 49.  The Eleventh Circuit held that Plaintiff's

complaint had failed to allege facts which would constitute bad faith by Defendants, a

necessity to overcome the constraints of *Younger*.  Doc. 49, pp. 3-4.  The court found

that amendment of the complaint would be futile because Plaintiff had admitted that "the

stated bases for Judge Dekker's order to show cause were Appellant's violation of a

court order and his deliberately late arrival for scheduled court proceedings."  *Id.*, p. 4.

A bad faith state criminal prosecution is an exception to the requirement of

*Younger* abstention.  Doc. 34.  <u>Fitzgerald v. Peek</u>, 636 F.2d 943 (5th Cir.), *cert. denied*,

452 U.S. 916 (1981).  "[T]he strength of the evidence and seriousness of the charges

should be considered in determining if retaliation or bad faith exists."  <u>Smith v.</u>

<u>Hightower</u>, 693 F.2d 359, 369 (5th Cir. 1982).  "To obtain a permanent injunction . . . the

plaintiff must show that 'but for' the desire to retaliate the charges would not have been

brought."  <u>Lewellen v. Raff</u>, 851 F.2d 1108, 1110 (8th Cir. 1988), *cert. denied*, 489 U.S.

1033 (1989), *quoting*, <u>Hightower</u>, 693 F.2d at 367 & n. 19).  This was the status of the

law when Plaintiff filed this suit.

---

[2] The federal courts, by virtue of 28 U.S.C. § 2283, generally lack the power to enjoin pending state court proceedings, "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  Independent of the statutory limitation on the federal injunctive power, considerations of federalism and comity have led to the development of an "abstention doctrine" that counsels against federal interference with pending state court proceedings.  <u>Younger v. Harris</u>, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

When considering Defendants' motion to dismiss, I concluded that:

> Plaintiff has not shown manifest bad faith or harassment.  The order to
> show cause stands solidly on its own, and plainly alleges conduct that
> would be indirect criminal contempt.

*Id.*, p. 7.  Judge Mickle adopted my recommendation as to this and dismissed the

complaint.

The question before this court now, however, is Rule 11, not Rule 12.  FED. R.

CIV. P. 11(b) provides:

> **(b) Representations to the Court.**  By presenting to the court a pleading,
> written motion, or other paper – whether by signing, filing, submitting, or
> later advocating it – an attorney or unrepresented party certifies that to the
> best of the person's knowledge, information, and belief, formed after an
> inquiry reasonable under the circumstances:
>
>> (1) it is not being presented for any improper purpose, such
>> as to harass, cause unnecessary delay, or needlessly
>> increase the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions are
>> warranted by existing law or by a nonfrivolous argument for
>> extending, modifying, or reversing existing law or for
>> establishing new law;
>>
>> (3) the factual contentions have evidentiary support or, if
>> specifically so identified, will likely have evidentiary support
>> after a reasonable opportunity for further investigation or
>> discovery; and
>>
>> (4) the denials of factual contentions are warranted on the
>> evidence or, if specifically so identified, are reasonably
>> based on belief or a lack of information.

FED. R. CIV. P. 11(b).

Two documents filed by Plaintiff are at issue:  the complaint, doc. 1, and the

motion for a preliminary injunction, doc. 22.  When I issued the show cause order, I

noted that the following allegations that may violate Rule 11:

1.  The allegation in the complaint that the criminal contempt prosecution was "initiated and maintained" by Defendants "in retaliation to the post-trial motions [plaintiff] filed" and "to harass and deter him from pursuing the legal issues raised therein."  Doc. 1, p. 6.

2.  The allegation that Defendant Dekker had Plaintiff arrested "in open court" "to harass, deter, and prevent Plaintiff" "from exercising his constitutional right" to raise legal issues because "she felt personally attacked thereby."  Doc. 1, p. 13.

3.  The allegation that the criminal contempt prosecution was in "bad faith."  Doc. 1, p. 14.

4.  The allegation that there was no "prior court order prohibiting" Plaintiff from "contacting" prospective juror Wiggins prior to July 12, 2007, when the written order was entered.  Doc. 1, p. 14.

5.  The allegation in the motion for a preliminary injunction that Defendant Dekker's criminal contempt charge was "a lie" that Plaintiff contacted prospective juror Wiggins "via telephone on 1/11/07 in violation of a court order."  Doc. 22, p. 3.

Doc. 35.

Plaintiff points out that Judge Dekker, who issued the show cause order, presided over the contempt proceeding.  Doc. 81, p. 2.  I incorrectly assumed that Judge Dekker would not try an indirect criminal contempt charge and, in that respect, failed to afford Plaintiff's allegation an assumption of truth.  If Judge Dekker were no longer involved, I reasoned, the only effect of an injunction from this court would be to overturn her show cause order, and I reasoned, erroneously, that this was precluded by the *Rooker-Feldman* doctrine.  Doc. 28, p. 5.  Judge Dekker in fact tried the contempt issue, finding Plaintiff in contempt.  Doc. 63-3, p. 2.  My assumption, therefore, that Judge Dekker would not be further involved, was wrong, but the point does not answer the question of whether Plaintiff alleged in this court sufficient facts to show bad faith to overcome the constraints of *Younger*.

Indirect criminal contempt in Florida has significant due process protections. FLA. R. CRIM. P. 3.840.

> Consequently, as reflected by the substantial requirements of rule 3.840, the indirect criminal contempt process requires that all procedural aspects of the criminal justice process be accorded a defendant, including an appropriate charging document, an answer, an order of arrest, the right to bail, an arraignment, and a hearing. A defendant is entitled to representation by counsel, may compel the attendance of witnesses, and may testify in his own defense. The entire proceeding is conducted in open court and made a part of the record.

Paletti v. State, 727 So. 2d 291, 293 (Fla. 1st DCA 1999). An indirect criminal contempt trial in Florida is before the judge who issued the show cause order, but "[i]f the contempt charged involves disrespect to or criticism of a judge, the judge shall disqualify himself or herself from presiding at the hearing." Rule 3.840(e). This is much like the federal due process rule. If a judge is the target of extreme insolence and insult, he must pass the contempt proceeding to another judge if the original judge does not adjudicate and punish the contemptuous act during trial. In re McDonald, 819 F.2d 1020, 1025 (11th Cir. 1987), citing Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971).[3] The defendant in such a proceeding may also move to recuse the presiding judge pursuant to FLA. R. JUD. ADMIN. 2.330; Berkowitz v. Rieser, 625 So. 2d 971, 972 (Fla. 2d DCA 1993). I see nothing in the decision from the Florida First District Court of Appeal addressing an appeal from denial of a motion to recuse or disqualify Judge Dekker from presiding at the indirect criminal contempt trial. Doc. 63-3.

---

[3] It will be apparent in what follows that Plaintiff did not insult Judge Dekker to the degree that the pro se criminal defendant insulted the trial judge in Mayberry. In Mayberry, the contemnor called the judge a "dirty sonofabitch," a "dirty, tyrannical old dog," told the judge to "keep his mouth shut," said: "Go to hell. I don't give a good God damn what you suggest, you stumbling dog," and said "you started all this bullshit in the beginning." 400 U.S. at 456-462, 91 S.Ct. at 501-503.

Plaintiff could have pursued that remedy in state court, whether based upon state or federal law, and perhaps he did at the trial level.[4]  In short, all of the due process protections that Plaintiff needed, including a proper objection to trial by Judge Dekker, were in place in state court.

Plaintiff brought suit in this court seeking injunctive relief alleging that circuit court Judge Dekker was biased against him and his client, and that he could not get a fair trial in the pending indirect criminal contempt proceeding.

Plaintiff's theme of persecution begins in paragraph 10 of the complaint, doc. 1. There, Plaintiff alleges that Judge Dekker "took offense" when Plaintiff sought to orally have her disqualified on December 15, 2006.  *Id.*  He alleges that Judge Dekker "prohibited" him from stating the legal basis on the record.  *Id.*  In the written motion which Plaintiff then filed to disqualify Judge Dekker, Plaintiff alleged that when he orally moved to disqualify Judge Dekker,

> [r]ather than permit Jason Harris'[s] attorney to do so on the record, Judge Dekker threatened to hold Attorney Alan in contempt if he continued to move ore tenus to disqualify her on the record and further directed the court reporter to stop typing/taking down [sic] what was being said.

Doc. 22, Ex. 5 (doc. 22-5, p. 11, on ECF).

As proof that Judge Dekker "took offense," Plaintiff submitted an excerpt from the transcript.  Doc. 22-3.  The transcript provides:

> Mr. Alan:  Your Honor, I'm moving to disqualify you at this time ore tenus, which will be followed up by a written motion on Monday morning.

---

[4] Plaintiff did file a motion to recuse Judge Dekker on January 27, 2007, but that motion was filed before the contempt show cause order was entered and was filed on behalf of his client.  Doc. 22-5.  It was directed to Plaintiff's efforts to interview venire members after the trial.

The Court:     You need to file a written motion.

Mr. Alan:      No, the rule says that when I move ore tenus to disqualify
               you, you cannot make any more decision on the case.[5]  I'm
               going to state on the record the ore tenus basis and it will be
               followed up by the appropriate written motions with ten days.

The Court:     I will not consider an oral motion.  If you want to sit down and
               write it out right now, do it.

Mr. Alan:      I have already documented the record.  You are not
               permitted under the rule to continue to make rulings.

The Court:     Sit down and write the motion.

Mr. Alan:      So I have done what the law requires me to do.

The Court:     Well, I find your oral motion facially insufficient since I asked
               you to write it down.

Mr. Alan:      For the record, the legal basis for the ore tenus motion –

Court Reporter: Can you come up here so I can hear you?

The Court:     I am not considering an oral motion.

Court Reporter: I cannot take two people.

Mr. Alan:      We're just putting it on the record.  I already know your
               ruling.  That's been the problem.

The Court:     You're to be quiet, Mr. Alan, and sit down.

Mr. Alan:      So you're refusing to allow me to put on the record the basis
               for the ore tenus motion?

The Court:     You can talk to your heart's content when I leave.

---

[5] This was an arrogant misstatement of Florida law.  The Rule provides that
Judge Dekker was to simply pass upon the legal sufficiency of the motion, and not the
truth of the facts alleged, and if legally sufficient, immediately enter an order granting
disqualification.  FLA. R. JUD. ADMIN. 2.330(f).  Disqualification does not occur simply
because a motion is filed.

Mr. Alan:    Okay.

The Court:    Now if you would like to writ down a motion, I welcome you
to do that.  It does not have to be typed.  You can hand write
it out and I will consider it.  All right.

Doc. 22, Ex. 2 (doc. 22-3 on ECF, pp. 4-6).

In summary, Plaintiff's accusation that Judge Dekker threatened to hold him in contempt for moving ore tenus to disqualify her is false.  Judge Dekker did not instruct the court reporter not to record the oral motion.  Instead, she told Plaintiff that he could freely place his motion upon the record for the court reporter after she left the courtroom.  She also invited Plaintiff to handwrite the motion, immediately submit it, and she would consider it.  FLA. R. JUD. ADMIN. 2.330(c)(1), effective on September 21, 2006, requires a written motion.[6]  It also permits an oral motion, but the oral motion must be reduced to writing and promptly filed.  Rule 2.330(e).  It would appear to me that Judge Dekker followed this rule, and that she had discretion to direct Plaintiff to submit the motion in writing immediately rather than remain in court and listen to it.  She told Plaintiff she would consider it.  But even if any of this were judicial error under state law, none of this is evidence that Judge Dekker "took offense."  Indeed, the transcript shows that she displayed remarkable patience.

Plaintiff next alleges that Judge Dekker "took offense" when he filed a motion for new trial, notice of intent to interview jurors, and request for an extension of time to file a motion for permission to interview jurors.  Doc. 1, ¶ 11.  The motion is an exhibit 3 to the motion for a preliminary injunction.  Doc. 22, Ex. 3 (doc. 22-4 on ECF).   Plaintiff also

---

[6] "(c) Motion.  A motion to disqualify shall:  (1) be in writing."

alleges that on January 29, 2007, he filed a written motion to disqualify Judge Dekker. Doc. 1, ¶ 13.  He alleges that Judge Dekker "took offense" to this motion.  Plaintiff has submitted a copy of that motion as an exhibit to the motion for a preliminary injunction. Doc. 22, Ex. 4 (doc. 22-5).

The motion for a new trial and for other relief is a routine motion, for the most part, and simply presents alleged trial error.  The motion for disqualification is directed to the adverse rulings by Judge Dekker, though the ad hominem tone is a bit more strident, but judges consider such motions all the time.  The mere filing of the motion is not evidence that Judge Dekker "took offense."

One aspect of these motions deserve closer analysis, however.  The motion for a new trial alleges the following:

> After the retrial, Defense Counsel learned from Defendant Brian Bowman that Christopher Jickett [a witness for the State] and DeLane Adams worked together for a local county commission[er], Bill Proctor.  The prior working relationship between Christopher Jickett and DeLane Adams is critical because shortly after the first mistrial and weeks before the retrial, DeLane Adams approached Jason Harris in Cafe Cabernet.  DeLane Adams advised Jason Harris that he parked near and or [sic] knew Judge Dekker and that in speaking with her, it was advised that he (Jason Harris) get a local attorney and get rid of the attorney that he had from Palm Beach because everyone perceived him to be arrogant.  DeLane Adams offered him money to change attorneys indicating that if he did not, he would not be successful on retrial.  While the discussion was taking place Jason Harris called his attorney, Richard Keith Alan II, placing his phone on speaker so that Attorney Alan could hear the statements by DeLane Adams.  *Attorney Alan heard the statements but thought nothing of it until after the retrial.*  Curiously, in the days following DeLane Adams'[s] conversation with Jason Harris, the Tallahassee Democrat published an article indicating that DeLane Harris was stepping down from his position with county commissioner Bill Proctor and that he was returning to Chicago. . . .

Doc. 22, Ex. 3, doc. 22-4, p. 8 (emphasis added). These allegations are briefly referenced in the motion for disqualification. Doc. 22-5, pp. 3, 12-13.

Plaintiff has not come forward with an affidavit from DeLane Adams or his former client, Jason Harris. The allegation set forth above does not even specifically state that Judge Dekker told DeLane Adams to tell Jason Harris to terminate his relationship with Plaintiff, using instead the vague "it was advised" without stating who advised it or when and where this occurred. Presumably Judge Dekker ruled upon this motion for disqualification, but her ruling as to this allegation is not before this court. In any event, Plaintiff had an adequate remedy, an appeal to the Florida First District Court of Appeal. This single allegation is too vague and unsupported to show a bad faith exception to the constraints of *Younger*.

Furthermore, the issue of whether Judge Dekker said this to DeLane Adams was not timely presented to Judge Dekker. Plaintiff acknowledges in the passage above that he knew of this alleged basis to disqualify Judge Dekker, but did nothing about it until after the retrial, which ended unfavorably for his client. Rule 2.330(e) provides: "A motion to disqualify shall be filed within a reasonable time not to exceed 10 days after discovery of the facts constituting the grounds for the motion and shall be promptly presented to the court for an immediate ruling."

This leaves for consideration all of Plaintiff's allegations concerning the commencement of the indirect criminal contempt proceedings as the only conceivable basis for overcoming the abstention rule of *Younger*. With hindsight we now know that the Florida First District Court of Appeal affirmed the indirect criminal contempt judgment of the state court. Alan v. State, 39 So. 3d 343 (Fla. 1st DCA), *review denied*,

46 So. 3d 565 (Fla. 2010) (table); doc. 63. Judge Benton dissented in part. Judge Benton said that a post-trial court order for permission to interview a venire member who was not selected for the jury in a criminal trial was perhaps not required under Florida law. Doc. 63-3, p. 12 (p. 13 on ECF), n. 4. If that were the case, then Plaintiff followed the correct procedure by giving notice of intent to interview, but without waiting for court permission. But two members of the court disagreed. They were aware that the prospective juror was not seated as a juror (stating that fact in the opinion), but still held that in a criminal trial pursuant to FLA. R. CRIM. P. 3.575, an attorney must first obtain permission from the court to interview a juror *or a prospective juror* after the trial. Doc. 63-3, pp. 2, 4-7 (pp. 3, 5-8 on ECF).

A further refinement is also revealed in that opinion. At oral argument, the State "conceded that the trial court's *ruling* did not, if intended *to prohibit contact*, constitute an *order* 'express enough to survive scrutiny on appeal.' " *Id.*, p. 13 (p. 14 on ECF) (emphasis added). The state trial court was aware of the distinction as its contempt order did not allege violation of a court order, but a violation of a court ruling.

There were four specifications of indirect criminal contempt in Judge Dekker's show cause order that concerned Plaintiff's post-trial contact with a prospective juror, and only the first, ground a, specifically alleged that the contact itself, standing alone, was in violation of a court ruling.

Ground b was that Plaintiff had misrepresented to the prospective juror that "he had the Court's permission or order which allowed him to interrogate Ms. Wiggins." Doc. 22-6, p. 1 (p. 2 on ECF). Plaintiff has not disputed that he blatantly misrepresented to Ms. Wiggins his authority from the court, and, in any event, that

factual matter is settled by the First District Court of Appeal's decision. This misbehavior is especially serious given Judge Dekker's ruling, which will be set forth ahead.

Ground c was that Plaintiff interrogated Ms. Wiggins "against her will, or fail[ed] to cease contact when she clearly expressed her participation in the interrogation was not free and voluntary." *Id.* Plaintiff has not disputed that he did this, and, in any event, that factual matter is also foreclosed by the state court's decision.

Ground d was that Plaintiff sought "production from Juror Wiggins'[s] of her medical records or interrogating her further about them, in direct contravention of the Court's ruling." *Id.* Judge Benton's only dissent was that there was no court *order* forbidding *contact* with Ms. Wiggins. During jury selection, Judge Dekker permitted Plaintiff to question Ms. Wiggins extensively about her medical condition. Doc. 22, Ex. 7, pp 3-23, doc. 22-8, pp. 4-24 on ECF. Charles Hobbs, who represented four of the defendants, was satisfied that Ms. Wiggins could sit as a juror despite her health problems. *Id.*, p. 19, p. 20 on ECF. The prosecution moved to strike her for health reasons. *Id.*, p. 18, p. 19 on ECF. Plaintiff then suggested that Ms. Wiggins had been "tampered with" and was coached to provide the medical information she provided, and he asked for permission to get her medical records. *Id.*, p. 22, p. 23 on ECF. Judge Dekker said: "I will go ahead and allow this juror to go home. And your claim and request on her is nothing short of outrageous, and that is denied." *Id.*, p. 23, p. 24 on ECF. The court determined that the prosecution's strike was racially neutral and then said:

> So I feel like there must be something that she would like to be excused and so – and especially in light of what Mr. Alan has said, I think I should excuse her and *save her from being a part of this trial any further so that she doesn't have to undergo even the threat of some of the things he [Plaintiff] has indicated.* . . . So when all is said and done, I am letting her go.

*Id.*, p. 24, p. 25 on ECF (emphasis added). I really do not know how much clearer a ruling Plaintiff needed to understand that Judge Dekker did not want him to further interrogate Ms. Wiggins about her medical condition and medical history. It is one thing to think that one does not have to obtain court permission to interview a venire member who was not selected after trial, a view Judge Benton might support (but not the opinion of the court), but quite another thing to do so after this exchange with a Circuit Judge.

Finally, all three judges on the First District Court of Appeal found that Plaintiff was in contempt for failing to appear for trial on December 11, 2006, at 9:00 a.m., ground e of the order to show cause, though Judge Benton thought that this tardiness was a direct criminal contempt. Plaintiff does not dispute this finding. Indeed, at the time that Ms. Wiggins was considered as a potential juror, on December 12, 2006, the following exchange took place:

Mr. Alan: Your Honor, I am moving for a stay in the proceedings so I can file for a temporary injunction in federal court. If your Honor denies it, that's fine.

The Court: It is denied.

Mr. Alan: Okay. I will take it up at lunch time.

The Court: Well, if you file it, don't – *you make sure somebody else files it and you are here in court on time. I don't care what you file in what court. That is your business. But unless a superior court actually stays my proceeding, we are not stayed and you need to be here so we can proceed.*

Mr. Alan:     I understand.  The rule in federal court is if the case is not
              stayed, *I can be held in contempt unless they stay it.  So I
              am really familiar with it.  I will comply with the Court's
              orders.*

Doc. 22, Ex. 7, pp. 25-26, doc. 22-8, pp. 26-27 on ECF (emphasis added).  This

colloquy occurred just the day after Plaintiff absented himself from Judge Dekker's trial,

without permission, to seek a writ of prohibition in the First District Court of Appeal.

Doc. 22, Ex. 1, doc. 22-2 on ECF.

**Conclusion**

It is concluded, therefore, that the allegations in the complaint filed by Plaintiff, (1)

that the criminal contempt prosecution was "initiated and maintained" by Defendants "in

retaliation to the post-trial motions [plaintiff] filed" and "to harass and deter him from

pursuing the legal issues raised therein," doc. 1, p. 6, (2) that Defendant Dekker had

Plaintiff arrested "in open court" "to harass, deter, and prevent Plaintiff" "from exercising

his constitutional right" to raise legal issues because "she felt personally attacked

thereby," doc. 1, p. 13, and (3) that the criminal contempt prosecution was in "bad faith,"

doc. 1, p. 14, were presented to this court to harass Judge Dekker, to cause

unnecessary delay in the state proceedings and in this court, to needlessly increase the

cost of that and this litigation, were not warranted by existing law or a nonfrivolous

argument for modifying existing law, and the factual contentions did not then and do not

now have evidentiary support.  These allegations violate FED. R. CIV. P. 11(b)(1)-(3).

The allegation that there was no "prior court order prohibiting" Plaintiff from

"contacting" prospective juror Wiggins prior to July 12, 2007, when the written order was

entered, doc. 1, p. 14, was true, but not relevant.  When the complaint was filed, Plaintiff

was facing trial on indirect contempt charges in part for violating a court ruling, not a

court order.  The allegation in the motion for a preliminary injunction that Defendant

Dekker's criminal contempt charge was "a lie" that Plaintiff contacted prospective juror

Wiggins "via telephone on 1/11/07 in violation of a court order," doc. 22, p. 3, is much

the same, though quite a bit more needlessly vehement and personal.  Like the other

assertion, the contention begins with a flawed premise.  However, it is not unusual for a

court to have to sift through arguments with flawed premises.  Standing alone, these

two statements do not violate Rule 11.  They are evidence, however, supportive of the

conclusions above, that when he filed this suit, Plaintiff sought to harass Judge Dekker

and to increase the cost of litigation with claims having no arguable support in the state

record.

**Conclusion**

For these reasons, Defendant Dekker's motion for Rule 11 sanctions and

sanctions pursuant to 28 U.S.C. § 1927 should be granted.

> Although the sanctions most commonly imposed are costs and attorney's
> fees, the selection of the type of sanction to be imposed lies with the
> district court's sound exercise of discretion.  *See Donaldson v. Clark*, 819
> F.2d 1551, 1557 (11th Cir.1987).  When imposing sanctions, the district
> court must describe the conduct determined to constitute a violation of the
> rule and explain the basis for the sanction imposed. See Fed.R.Civ.P.
> 11(c)(3).

Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1295 (11th Cir. 2002).  An award of

expenses, including attorney's fees, is the most appropriate here.  This court has not

experienced a history of abusive litigation by Plaintiff, and there is no need for any

sanction other than to recompense Defendants Dekker and Meggs for all of their

expenses incurred in defending against this lawsuit, including litigation to obtain

attorney's fees.  Sanctions include the expenses, including attorney's fees, incurred in obtaining the sanction.  <u>Norelus v. Denny's, Inc.</u>, 628 F.3d 1270, 1302 (11th Cir. 2010).

Accordingly, it is **RECOMMENDED** that Defendant Dekker's motion for Rule 11 sanctions, doc. 10, and Defendants Dekker and Meggs's motion attorney's fees pursuant to 28 U.S.C. § 1927, doc. 76, be **GRANTED** the case be remanded to determine and recommend the amount.

**IN CHAMBERS** at Tallahassee, Florida, on April 14, 2011.


<u>**s/     William C. Sherrill, Jr.**</u>
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**